1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6
7    THOMAS GOOLSBY,                          Case No.  13-cv-03366-JD
                    Plaintiff,
8
          v.                                  ORDER GRANTING
9                                             DEFENDANTS' MOTION FOR
     PUGETT, et al.,                          SUMMARY JUDGMENT
10
                    Defendants.               Re: Dkt. Nos. 55, 65
11
12
13          Plaintiff is a state prisoner proceeding pro se in this civil rights action under 42 U.S.C. §
14   1983.  Defendants have filed a motion to dismiss and a motion for summary judgment.  Plaintiff
15   has filed a motion to amend and has opposed the motion to dismiss and summary judgment.  This
16   case continues on the second amended complaint ("SAC") with claims that defendants denied
17   plaintiff access to the courts and engaged in retaliation.   Plaintiff alleges that his request to
18   correspond with inmates at another prison was denied and he missed four court phone calls for
19   state court cases on July 10, 2012, September 27, 2012, October 31, 2012, and February 25, 2013.
20   He alleges violations of federal and state law.
21   I.     MOTION FOR SUMMARY JUDGMENT
22   Factual Background[1]
23          Plaintiff was transferred to Pelican Bay State Prison ("PBSP") on March 28, 2012.  Motion
24   for Summary Judgment ("MSJ") at 6.  During the relevant time, defendant Lewis was warden at
25   the prison, defendant Puget was a supervising correctional counselor and later a captain, defendant
26   Mills was plaintiff's correctional counselor, defendant Barnts was litigation coordinator from
27
28   _____
     [1] The following facts, unless otherwise noted, are undisputed.

United States District Court
Northern District of California

August 1, 2010, to September 27, 2012, and defendant Soderlund was litigation coordinator from September 27, 2012, to May 2015.  *Id*. at 5.

**Inmate Correspondence**

On April 10, 2012, approximately two weeks after plaintiff arrived at PBSP, defendant Barnts received an email from the litigation coordinator at California Correctional Institution ("CCI"), plaintiff's prior prison.  *Id*. at 7; Barnts Decl., Ex. A.  The email noted that plaintiff was a validated gang member in the Nazi Low Rider gang and a validated associate of the Aryan Brotherhood.  Barnts Decl. at 2, Ex. A.  It also stated that plaintiff had previously been allowed to correspond with other inmates who were co-litigants in a now closed court case, but the privilege was revoked after the gang investigator found that non-litigation content was being communicated.  *Id*.  It also noted that plaintiff had an extensive history of violence, weapon making, and gang activity, and that he was extremely litigious.  *Id*.

On April 26, 2012, plaintiff submitted a request to correspond with several inmates at CCI for new court cases.  Opposition, Ex. G.  Plaintiff sought the request for two cases: *Goolsby v. Cate*, California Superior Court No. S-1500-CL-266864, and *Goolsby v. Stainer*, California Superior Court No. S-1500-CL-267503.  SAC at 6-7.  Defendant Mills denied the request the following day.  Opposition, Ex. G.

On May 31, 2012, non-defendant correctional counselor Ryan processed another of plaintiff's requests to correspond with inmates at CCI.  Decl. Ryan at 2.  Ryan recommended that the request be approved on May 31, 2012.  *Id*. at 3.  The facility captain approved the request on June 13, 2012.  *Id*.  However, the request was ultimately denied because staff at CCI would not approve the request due to plaintiff's previous misuse of correspondence.  *Id*.  Ryan stated that when he initially recommended the approval, he had not contacted staff at CCI.  *Id*.

Another non-defendant correctional counselor approved a request from plaintiff to correspond with another inmate on September 12, 2012.  Opposition, Ex. H.  It is unclear if this request was approved or rejected by the supervisor, but plaintiff states in a declaration that his requests to correspond with the other plaintiffs were denied.  Opposition, Ex. S.

Mills states that at some point after May 9, 2012, he denied plaintiff's requests to correspond based on the information from CCI that the gang investigator found inappropriate communications that did not involve litigation. Mills Decl. at 3. Plaintiff does not contest that his permission to communicate with other inmates while at CCI was revoked or that defendants received this information from staff at CCI. Nor does plaintiff contest that one month later permission was granted by a different correctional counselor and then denied due to the objection from staff at CCI. Plaintiff states that Mills told him that he had spoken with defendant Barnts and a staff member at CCI who provided negative information about plaintiff. Opposition at 4. Plaintiff alleges that Mills said:

> Your in the Bay now, we don't fucking play. All these lawsuits are gonna stop now! We are not fucking pussies like them guys down at CCI. We won't transfer you, there's no where to send you. We'll break you. I'll strip your cell clean and burn every piece of paper in it. This is your warning. . . .   You don't get it, you have nothing coming. We will fight you every step of the way and were watching you. I'm not approving shit for you. Sit in your cell, shut up and drop your legal bullshit or else your time here is gonna get really rough. Our warden backs us up, he doesn't tolerate this bullshit.

*Id*. Plaintiff does not provide the date this exchange occurred.

**Court Calls**

Court telephone calls are initiated by the courts. MSJ at 8. If the prison litigation office receives a court order via the mail or fax indicating that an inmate has a scheduled call, the particular facility and housing staff for the prisoner is notified. *Id*. It is the responsibility of the housing staff to schedule the inmate to be escorted to a phone when the call occurs. *Id*. The prison litigation office can receive notice of a court telephone call from CourtCall, the company that coordinates calls for California state courts. *Id*.

There are various reasons why a court call does not occur. *Id*. The prison sometimes does not receive notice of a scheduled call, or the prison receives notice after the appointment for the call has passed, or there is not enough time to coordinate prison staff to escort the prisoner to the call. *Id*. A prisoner can refuse the call or there can be an emergency situation in the prison that prohibits inmates from being escorted to the phone due to safety reasons. *Id*. at 9.

United States District Court
Northern District of California

3

**July 10, 2012**

A CourtCall document shows that confirmation for the July 10, 2012 call was sent to CCI, not PBSP, for the case *Goolsby v. Stainer*, California Superior Court No. S-1500-CL-267503. MSJ at 9; Barnts Decl. Ex. B.  The phone and fax numbers on the CourtCall document are for CCI, not PBSP.  *Id*.  Plaintiff submitted an inmate request form on June 25, 2012, stating that he had court calls on July 10, 2012, August 14, 2012, and December 6, 2012.  Opposition, Ex. K.  A response from a prison staff member whose name cannot be identified on the exhibit indicates that the prison was aware of the calls.  *Id*.  Plaintiff missed the phone call.  Several other co-plaintiffs appeared by telephone.  MSJ, Request for Judicial Notice ("RJN"), Ex. F at 7-8.[2]  No defendants appeared because they had not been served.  *Id*. at 8.  The case was continued for plaintiffs to serve defendants.  *Id*.  *Goolsby v. Stainer*, California Superior Court No. S-1500-CL-267503, was dismissed with prejudice on March 13, 2014, pursuant to plaintiff's request for dismissal.  RJN, Exs. F, H.  A monetary settlement was reached between plaintiff and defendants.  *Id*.

Defendants argue that they did not receive notice of the July 10, 2012, court call.  MSJ at 9.  Plaintiff disagrees.  In the complaint, plaintiff argues that prior to July 10, 2012, defendant Barnts made inappropriate comments to the effect that he would not permit plaintiff to participate in the court calls to spite plaintiff due to his legal cases, and that Barnts did not want to help plaintiff sue the prison.  SAC at 11.  Plaintiff also states in the complaint that Barnts was upset about a settlement of a federal court case where plaintiff received money.  SAC at 10.

However, the settlement that plaintiff refers to did not occur until July 24, 2012. Opposition, Ex. M.  Barnts' statement could not have happened before the July 10, 2012, court call.[3]  In the opposition to summary judgment, plaintiff states that he signed the settlement papers in late July 2012 and that was when Barnts made the statement in reference to an August 15, 2012,

---

[2] The Court takes judicial notice of the state court records.  *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007).

[3] This motion for summary judgment was filed on July 14, 2015.  On July 13, 2015, plaintiff filed a motion to amend noting that he was mistaken about when the interaction with Barnts occurred and that it was not before the July 2012 phone call.  He states the incidents he described in the complaint actually occurred in August 2012.  The Court will address the motion to amend and the different dates below.

phone call.  Opposition at 7.  Plaintiff alleges that he was not allowed to make the August 15, 2012, phone call.

Because the August 15, 2012, court call is not at issue in this action, defendants have not addressed it.  The state court records provide contradictory information regarding whether plaintiff appeared by phone for the August 15, 2012 phone call in *Goolsby v. Scarlett*, California Superior Court No. S-1500-CL-270540.  One entry in the state court docket states that plaintiff was not present by phone.  RJN, Ex. A at 10.  Another entry states that plaintiff was present.  RJN, Ex. A at 22.[4]  *Goolsby v. Scarlett*, California Superior Court No. S-1500-CL-270540 was dismissed on December 1, 2014, because plaintiff had failed to post security, $6,500, as a precondition to proceed as required under California Code of Civil Procedure section 391.3.  RJN, Ex. B.[5]

**September 27, 2012**

Plaintiff was scheduled for a court call on September 27, 2012, in *Goolsby v. Stainer*, California Superior Court No. S-1500-CL-267503, the same case as the July 15 court call.  MSJ at 9.  Defendants state that they did not receive notice of the call.  MSJ at 9.  Plaintiff alleges that defendants were aware of the call.  Opposition at 8.  The state court records indicate that a hearing was scheduled, but there is no notation that a court call notice was sent to defendants.  RJN, Ex. F at 9-10.

Due to plaintiff's missing the hearing, a sanction in the amount of $250 was imposed.  RJN, Ex. F at 11.  On February 21, 2013, plaintiff's motion to quash the sanction was granted and the superior court decided not to impose any sanction.  *Id*. at 13.  This entire case was eventually dismissed with prejudice on March 13, 2014, pursuant to plaintiff's request for dismissal after a settlement was reached.  RJN, Exs. F, H.

**October 31, 2012**

Plaintiff was scheduled for another court call in *Goolsby v. Stainer*, California Superior Court No. S-1500-CL-267503, on October 31, 2012.  The superior court records indicate that

---

[4] Plaintiff was also present by phone on August 14, 2012, for *Goolsby v. Cate*, California Superior Court No. S-1500-CL-266864.  RJN, Ex. C at 6.
[5] Plaintiff was found to be a vexatious litigant and ordered to post security.  RJN, Ex. B.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   notice was sent to the prison on October 22, 2012, that the hearing would be held in Department

2   17 at the superior court.  RJN, Ex. F at 12.  On October 29, 2012, the superior court, upon its own

3   motion, moved the hearing to Department 15 and ordered that notice be resent to the prison.  *Id*. at

4   15.  The court call was made to the original location, Department 17, on October 31, 2012, by

5   defendant Soderlund.  MSJ at 9.  The judge in Department 17 told Soderlund that it was the wrong

6   Department and that the judge was unable to transfer the call to Department 15, the new location.

7   *Id*.  As noted above, the sanction against plaintiff in this case was dismissed and the case was

8   dismissed at plaintiff's request after it settled.

9                               **February 25, 2013**

10           Plaintiff was scheduled for a court call on February 25, 2013 in *Goolsby v. Scarlett*,

11   California Superior Court No. S-1500-CL-270540.  MSJ at 10.  Plaintiff did not make the phone

12   call.  *Id*.  A few days earlier, on February 21, 2013, plaintiff completed a court call on another

13   case, *Goolsby v. Stainer*, California Superior Court No. S-1500-CL-267503.  *Id*; RJN, Ex. F at 24.

14   Officer Gonzalez, a non-defendant, escorted plaintiff to the February 21, 2013, court call.  MSJ at

15   10.

16           Defendants state that after the completed call on February 21, 2013, Gonzalez reminded

17   plaintiff that he had another court call on February 25, but plaintiff responded that he did not.  *Id*.

18   Plaintiff disputes this assertion and argues that the conversation with Gonzalez never occurred.

19   Opposition at 12.

20           Plaintiff did not complete the court call on February 25, and prison staff noted that he had

21   been overlooked.  Opposition, Ex. X.  The superior court ordered plaintiff to show cause why he

22   should not be sanctioned for missing the call, but the order to show cause was vacated on March

23   20, 2013.  RJN, Ex. A at 12.  This case was dismissed on December 1, 2014, because plaintiff

24   failed to post security as a precondition to proceed as required under California Code of Civil

25   Procedure section 391.4.  RJN, Ex. B.

26           From the relevant period of this case, April 2012 to February 2013, while plaintiff alleges

27   he missed four to five court calls, he successfully completed the following nine calls in the above

28   mentioned three cases:  In *Goolsby v. Scarlett*, California Superior Court No. S-1500-CL-270540,

there were calls on April 26, 2012, November 13, 2012, January 8, 2013, and January 10, 2013 (RJN, Ex. A at 9, 11-12; In *Goolsby v. Cate*, California Superior Court No. S-1500-CL-266864, there were completed calls on August 14, 2012, September 26, 2012, November 14, 2012, and December 6, 2012.[6]  RJN, Ex. C at 6, 8, 11-12; and in *Goolsby v. Stainer*, California Superior Court No. S-1500-CL-267503, there was a completed call on February 21, 2013.  RJN, Ex. F at 24.

Plaintiff's prison trust account reflects that he did not pay sanctions for any missed court calls.  MSJ at 10.

### Standard of Review

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.*

A court may grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id*.  The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *See id*. at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

---

[6] *Goolsby v. Cate*, California Superior Court No. S-1500-CL-266864 was dismissed on April 15, 2013, because plaintiff failed to post security, $9,100, as a precondition to proceed as required under California Code of Civil Procedure section 391.4.  RJN, Ex. D.

1    For purposes of summary judgment, the court views the evidence in the light most

2    favorable to the nonmoving party; if the evidence produced by the moving party conflicts with

3    evidence produced by the nonmoving party, the court must assume the truth of the evidence

4    submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

5    The court's function on a summary judgment motion is not to make credibility determinations or

6    weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv., Inc., v.*

7    *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

8    **Court Access**

9    **Legal Standard**

10    Prisoners have a constitutional right of access to the courts.  *See Lewis v. Casey*, 518 U.S.

11    343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  To establish a claim for any

12    violation of the right of access to the courts, the prisoner must prove that there was an inadequacy

13    in the prison's legal access program that caused him an actual injury.  *See Lewis*, 518 U.S. at 350-

14    55.  To prove an actual injury, the prisoner must show that the inadequacy in the prison's program

15    hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of

16    confinement.  *See id.* at 354-55.  With respect to a claim regarding active interference by prison

17    officials, a prisoner alleges an actual injury if, as a result of the defendants' alleged actions, his

18    pending suit was dismissed.  *See Silva v. Di Vittorio*, 658 F.3d 1090, 1103-04 (9th Cir. 2011).  A

19    prisoner's constitutional right to litigate without interference encompasses the First Amendment

20    right to petition the government by filing civil actions that have a reasonable basis in law or fact.

21    *Id.* at 1102.

22    **Discussion**

23    Defendants contend that even assuming they deliberately denied the court calls, plaintiff

24    cannot demonstrate an actual injury.  The undisputed facts support this argument.  None of the

25    missed phone calls resulted in the dismissal of any of plaintiff's three cases or any adverse

26    decisions that were not reversed.  When sanctions were imposed in two of the cases, those orders

27    were later vacated and plaintiff never had to pay the sanctions.  Two of the cases were later

28    dismissed for plaintiff's failure to post security pursuant to state law because plaintiff was deemed

8

a vexatious litigant.  The third case was voluntarily dismissed by plaintiff after a settlement was reached.  While it is undisputed that plaintiff missed several phone calls, there is no genuine dispute as to the lack of an actual injury to plaintiff as a result of the missed calls.  Similarly, plaintiff cannot show an injury for being prevented from corresponding with his co-litigants.  One of the cases settled and the other two cases were dismissed for failure to post security.

Plaintiff argues that missing the phone calls denied him the ability to argue several motions.  He also contends that not being allowed to communicate with the other inmates prevented him from being able to proceed with them as litigants in his cases, which he claims caused him to receive an inadequate settlement in one case and forced the other cases to be dismissed.  As stated above, those two cases were dismissed because plaintiff failed to post more than $15,000 in security, as required by the state courts because plaintiff was found to be a vexatious litigant.  RJN, Ex. B, D.  He states that his family would have paid the $15,000 but that they did not do so because he could not proceed with the other inmates.  His argument cannot overcome summary judgment because plaintiff has not sufficiently demonstrated how not having co-litigants prevented family members from paying the security.  Moreover, plaintiff missed only a few phone calls in multiple years of litigation during which time he filed numerous motions.

Plaintiff also argues that he settled the third case with defendants and would have received more money if he had been able to continue with co-litigants.  His argument in support of this contention is unavailing.  Plaintiff has failed to demonstrate a causal connection between his claims of being denied court access to the results of the superior court cases.  *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (there must be an actual connection or link between the actions of the defendant and the deprivation alleged to have been suffered by plaintiff).  Summary judgment is granted to defendants for this claim.

**Retaliation**

**Legal Standard**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

1   exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

2   correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

3   *Accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under §

4   1983 for retaliation must allege that he was retaliated against for exercising his constitutional

5   rights and that the retaliatory action did not advance legitimate penological goals, such as

6   preserving institutional order and discipline).

7          Retaliatory motive may be shown by the timing of the allegedly retaliatory act and

8   inconsistency with previous actions, as well as direct evidence. *Bruce v. Ylst*, 351 F.3d 1283,

9   1288-89 (9th Cir. 2003).  However, mere speculation that defendants acted out of retaliation is not

10  sufficient.  *Wood v. Yordy*, 753 F.3d 899, 904-05 (9th Cir. 2014) (affirming grant of summary

11  judgment where no evidence that defendants knew about plaintiff's prior lawsuit, or that

12  defendants' disparaging remarks were made in reference to prior lawsuit).  A prisoner must at least

13  allege that he suffered harm, since harm that is more than minimal will almost always have a

14  chilling effect.  *Rhodes*, 408 F.3d at 567-68 n.11.

15         The prisoner bears the burden of pleading and proving absence of legitimate correctional

16  goals for the conduct of which he complains.  *Pratt*, 65 F.3d at 806.  At that point, the burden

17  shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory action

18  was narrowly tailored to serve a legitimate penological purpose.  *See Schroeder v. McDonald*, 55

19  F.3d 454, 461-62 (9th Cir. 1995) (defendants had qualified immunity for their decision to transfer

20  prisoner to preserve internal order and discipline and maintain institutional security).

21         Retaliation claims brought by prisoners must be evaluated in light of concerns over

22  "excessive judicial involvement in day-to-day prison management, which 'often squander[s]

23  judicial resources with little offsetting benefit to anyone.'"  *Pratt*, 65 F.3d at 807 (quoting *Sandin*

24  *v. Conner*, 515 U.S. 472, 482 (1995)).  In particular, courts should "'afford appropriate deference

25  and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for

26  conduct alleged to be retaliatory."  *Id.* (quoting *Sandin*, 515 U.S. at 482).

27

28

United States District Court
Northern District of California

10

1

**Discussion**

2

**Phone Calls**

3       The undisputed facts demonstrate that plaintiff missed court calls on September 27, 2012,

4   October 31, 2012, and February 25, 2013.  Defendants have shown that they did not purposefully

5   act to ensure that plaintiff missed these calls.  Even if a defendant took an adverse action against

6   plaintiff, there is no evidence that any defendant specifically prevented plaintiff from missing one

7   of these calls in retaliation for his lawsuits.  There is no evidence that any defendant told plaintiff

8   that he missed the September 27 phone call due to his litigation.  The undisputed facts demonstrate

9   the October 31 phone call was moved to a different court department two days before the call took

10  place.  A phone call was made on October 31, but it was made to the courtroom on the original

11  notice, and the judge who received it could not transfer it to the new courtroom.  Plaintiff does not

12  allege that any defendant deliberately had the call placed to the wrong courtroom in response to

13  plaintiff's litigation.  Rather, the undisputed facts demonstrate that the notice of the new call

14  arrived at the prison too close in time to when the call was being made.

15       Viewing the evidence of the February 25 phone call in a light most favorable to plaintiff,

16  defendants are still entitled to summary judgment.  Plaintiff has not shown that being overlooked

17  for the phone call was retaliatory.  Simply missing some of these phone calls is not enough.

18  Plaintiff successfully participated in at least nine court calls in his various cases, many of these

19  calls a few days before or after the missed calls.  The evidence does not show that defendants took

20  adverse action purposely against plaintiff due to his litigation history.  Plaintiff's speculation that

21  defendants acted out of retaliation is not sufficient.  *Wood*, 753 F.3d at 904-05.

22       It is undisputed that the official notice of the July 10, 2012 court call was not sent to

23  defendants at PBSP, but was sent to CCI, plaintiff's prior facility.  The undisputed facts also show

24  that an unidentified prison staff member was aware of the July 10 phone call.  Plaintiff originally

25  argued that defendant Barnts made several incriminating statements prior to the July 10 phone

26  call; specifically that Barnts would not permit the phone call due to plaintiff's many lawsuits and

27  because plaintiff was paid a settlement in a separate federal civil rights action.  However, the

28  settlement was not reached until July 24, 2012; therefore, Barnts could not have made these

United States District Court
Northern District of California

11

1    comments prior to the July 10, 2012 phone call.  Plaintiff makes no other allegations in his

2    opposition to support his argument that the July 10 phone call was missed in retaliation to his

3    protected activity.  Summary judgment is granted for this claim.[7]

4            **Inmate Correspondence**

5            It is undisputed that defendants received an email from CCI on April 10, 2012, stating that

6    plaintiff was a validated gang member in the Nazi Low Rider gang and a validated gang associate

7    of the Aryan Brotherhood.  The email also stated that plaintiff's previous ability to correspond

8    with other inmates at CCI to pursue joint litigation had been revoked after the gang investigator

9    found that plaintiff abused the correspondence privilege by communicating non litigation content.

10   Plaintiff does not deny these allegations.  It is also undisputed that several weeks after defendants

11   received this email, plaintiff submitted a request to correspond with inmates at CCI that was

12   denied by defendant Mills.

13           Plaintiff states that Mills threatened him if he continued with his litigation.  For purposes

14   of summary judgment, the Court must assume the truth of the evidence submitted by plaintiff, the

15   nonmoving party.  To meet his burden in demonstrating a genuine issue for trial, plaintiff must

16   still meet all the elements of a retaliation claim.  Assuming that defendant Mills took an adverse

17   action because of plaintiff's conduct and in doing so chilled plaintiff's rights, plaintiff must still

18   demonstrate that defendant's action did not advance a legitimate correctional goal.

19           Plaintiff has not met his burden of pleading and proving the absence of a legitimate

20   correctional goal.  A few weeks after plaintiff was transferred to PBSP, defendant was notified of

21   his gang affiliations and the revocation of his ability to correspond with other inmates due to

22   plaintiff abusing the privilege.  Defendant was also advised that plaintiff had an extensive history

23   of violence, weapon making and gang activity.  Stopping plaintiff's communications with other

24   inmates advanced a legitimate goal regarding the safety and security of inmates and staff at PBSP

25   and CCI.

26

27

28   ───────────────
     [7] Plaintiff's motion to amend to add an allegation of retaliation on August 15, 2012, will be
     discussed below.

United States District Court
Northern District of California

1    Plaintiff argues that the later initial approval by other correctional staff to correspond with

2    the other inmates supports his claim.   It is undisputed that one month after defendant denied the

3    request, non-defendant correctional counselor Ryan recommended that plaintiff's new request be

4    approved.  Decl. Ryan at 2.  But that recommendation was ultimately denied because of plaintiff's

5    previously misuse of correspondence with inmates.  Decl. Ryan at 2-3.  Ryan states in his

6    declaration that when he initially approved the request, he had not contacted staff at CCI.  Decl.

7    Ryan at 3.  Another non-defendant correctional counselor also initially approved a request for

8    plaintiff to correspond with another inmate on September 12, 2012, and that request was also later

9    denied.  Opposition, Ex. H, S.  The fact that all of these requests were similarly denied due to

10   concerns from staff at CCI supports defendants' argument that preventing plaintiff from

11   corresponding with other inmates advanced a legitimate correctional goal of safety.

12   In addition, the Court should "'afford appropriate deference and flexibility' to prison

13   officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be

14   retaliatory." *Pratt*, 65 F.3d at 807 (quoting *Sandin*, 515 U.S. at 482).  Here plaintiff had a

15   documented history of abusing the privilege of corresponding with other inmates, as well as a

16   history of gang ties and violence.  For all these reasons defendants are entitled to summary

17   judgment.

18        **Qualified Immunity**

19   Defendants also argue that they are entitled to qualified immunity.

20   The defense of qualified immunity protects "government officials . . . from liability for

21   civil damages insofar as their conduct does not violate clearly established statutory or

22   constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457

23   U.S. 800, 818 (1982).  The rule of "qualified immunity protects 'all but the plainly incompetent or

24   those who knowingly violate the law.'"  *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting

25   *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Defendants can have a reasonable, but mistaken,

26   belief about the facts or about what the law requires in any given situation.  *Id*. at 205.  A court

27   considering a claim of qualified immunity must determine whether the plaintiff has alleged the

28   deprivation of an actual constitutional right and whether such right was clearly established such

1    that it would be clear to a reasonable officer that his conduct was unlawful in the situation he

2    confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (overruling the sequence of the

3    two-part test that required determining a deprivation first and then deciding whether such right

4    was clearly established, as required by *Saucier*). The court may exercise its discretion in deciding

5    which prong to address first, in light of the particular circumstances of each case. *Pearson*, 555

6    U.S. at 236.

7         With respect to the denial of access to courts claim, the Court found that there was no

8    constitutional violation. For the same reasons, defendants are entitled to qualified immunity.

9    Defendants are also entitled to qualified immunity for the claim of retaliation related to the missed

10   court calls due to the absence of a constitutional violation.

11        With respect to the claim of retaliation for denying plaintiff the ability to correspond with

12   the inmates at CCI, defendant is entitled to qualified immunity even if there was a constitutional

13   violation. Assuming that defendant Mills made the statements attributed to him by plaintiff, the

14   undisputed facts demonstrate a legitimate correctional goal in his denial of plaintiff's request to

15   correspond. The information received by Mills prior to plaintiff's request stated that plaintiff's

16   correspondence privilege has been revoked at CCI due to inappropriate communications, as cited

17   by a gang investigator, and that plaintiff had an extensive history of violence, weapon making and

18   gang affiliations with the Aryan Brotherhood and Nazi Low Riders. It would not be clear to a

19   reasonable officer that his conduct would be unlawful in light of the overriding need of

20   institutional security which justified the denial of permission to correspond based on plaintiff's

21   history. Defendants are entitled to qualified immunity.

22   **II.    MOTION TO AMEND**

23        This case was initiated with the filing of the original complaint on July 18, 2013. The case

24   continues on the second amended complaint filed on July 18, 2014. Defendants filed a waiver of

25   reply on February 19, 2015. Plaintiff filed a proposed third amended complaint and motion to

26   amend on July 13, 2015. Defendants' motion for summary judgment was filed the next day, on

27   July 14, 2015.

28

United States District Court
Northern District of California

1

**Legal Standard**

2          A plaintiff may amend the complaint once as a matter of course within 21 days after

3    serving it.  Fed. R. Civ. P. 15(a)(1)(A).  But if the complaint requires a responsive pleading, a

4    plaintiff may amend the complaint 21 days after service of a responsive pleading or 21 days after

5    service of a motion under Rule 12(b), (e), or (f), whichever is earlier.  *Id*. at (a)(1)(B).  In all other

6    cases, a plaintiff must obtain the defendant's consent or leave of court to amend a complaint, and

7    the court should freely give leave when justice so requires.  *Id*. at (a)(2).

8          District courts must afford pro se prisoner litigants an opportunity to amend to correct any

9    deficiency in their complaints.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en

10   banc).  Yet, it lies within the district court's discretion whether a plaintiff may expand his

11   complaint by adding claims raised for the first time on summary judgment.  *See Brass v. County of

12   Los Angeles*, 328 F.3d 1192, 1197-98 (9th Cir. 2003) (upholding district court's finding that

13   plaintiff waived new § 1983 arguments raised for the first time in his motion for summary

14   judgment where nothing in the amended complaint had suggested he was raising those arguments

15   and he offered no excuse or justification for his failure to raise them earlier).  Factors to consider

16   include whether there is bad faith by plaintiff, undue delay, prejudice to defendants, futility in

17   amendment, and number of prior opportunities to amend.  *See Desertrain v. City of Los Angeles*,

18   754 F.3d 1147, 1154-55 (9th Cir. 2014) (considering these factors in finding district court abused

19   its discretion in failing to construe plaintiff's summary judgment motion and opposition to

20   defendants' summary judgment motion as a motion to amend complaint to add vagueness claim,

21   raised for the first time, and in failing to then allow such amendment).

22         Leave need not be granted where the amendment of the complaint would cause the

23   opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates

24   undue delay.  *See Janicki Logging Co.v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994).  A district

25   court's discretion to deny leave to amend is particularly broad where the plaintiff has previously

26   filed an amended complaint.  *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003)

27   (overruled on other grounds).

28

United States District Court
Northern District of California

**Discussion**

In the proposed third amended complaint, plaintiff seeks to add another instance of retaliation and denial of access to the courts.  He states that he missed a court call on August 15, 2012, and that the circumstances surrounding the July 10, 2012, missed call actually occurred prior to the missed August call.  Plaintiff states that he made this mistake about which call the circumstances related to because he sent his legal notes to a family member for safekeeping and the notes were not returned until recently.  He does not allege that defendants were responsible for this mistake and it is not clear why it took more than two years for plaintiff to obtain the notes from his family member.  The August 15 missed call concerned a different superior court case then the July 10 missed call.

Defendants argue that amending the complaint at this late time will improperly delay resolution of the pending motion to dismiss and motion for summary judgment.  The Court notes that plaintiff has already been provided several opportunities to amend and granting leave to change the dates would essentially add a new claim and could cause undue prejudice to defendants, who filed an extensive dispositive motion relying on the allegations of the second amended complaint.  "Late amendments to assert new theories are not reviewed favorably when the facts have been known to the party seeking amendment since the inception of the cause of action."  *Acri v. Intern'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986).

Defendants also argue that the motion to amend should be denied because the third amended complaint is futile and "futility of amendment, can by itself, justify the denial of a motion for leave to amend."  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  Looking to the merits of the motion for summary judgment in light of the proposed third amended complaint, summary judgment would still be granted for defendants.

Plaintiff states that he missed a court call on August 15.  He does not state what superior court case the call was for.  A review of the state court records from the motion for summary judgment indicates the call was for *Goolsby v. Scarlett*, California Superior Court No. S-1500-CL-270540.  RJN, Ex. A at 10, 22.  From the records it is not certain if plaintiff missed the call.  One

16

entry in the state court docket states that plaintiff was not present by phone.  RJN, Ex. A at 10.

Another entry states that plaintiff was present.  RJN, Ex. A at 22.  Plaintiff was present by phone

on August 14, 2012, for *Goolsby v. Cate*, California Superior Court No. S-1500-CL-266864.  RJN,

Ex. C at 6.

Assuming the plaintiff missed the August 15 call he is still not entitled to relief.  *Goolsby*

*v. Scarlett*, California Superior Court No. S-1500-CL-270540 was dismissed more than two years

later because plaintiff failed to post security.  RJN, Ex. B.  As discussed above, summary

judgment would be granted for defendants because plaintiff cannot demonstrate an actual injury

from missing this call to support a denial of access to the courts claim.

Summary judgment would be granted for defendants if plaintiff were allowed to proceed

with his retaliation claim for the August 15 phone call.  Plaintiff states that on August 15, non-

defendant Hardwick escorted plaintiff to the phone.  Proposed Third Amended Complaint at 12.

Hardwick twice attempted to make the phone call, but it would not go through.  *Id*.  Hardwick then

called the litigation office and said out loud, "Barnts is giving this guy the full treatment!" and told

plaintiff there would be no call.  Hardwick later asked plaintiff, "Why is Barnts so pissed at you?

They really don't like you at that office."  *Id*.

Assuming that plaintiff's facts are accurate, summary judgment would be granted for

Barnts.  It is undisputed that Barnts had no involvement in the multiple phone calls that did not

reach the superior court.  Plaintiff does not allege that Hardwick deliberately prevented the calls

from being connected, and, if so, there is no evidence that Barnts was responsible.  The only

allegations are that someone, perhaps Barnts, stated something to Hardwick about plaintiff's

litigiousness.  Assuming Barnts made such comments, they occurred after the phone calls could

not be connected to the court.  To the extent plaintiff contends that Barnts prevented the phone

calls from being connected based on Barnts' statements regarding plaintiff's settlement award,

those statements were allegedly made several weeks before.  Plaintiff cannot show that any actions

were taken because of his protected conduct, and plaintiff was allowed to make a court call the

previous day, August 14.

United States District Court
Northern District of California

1     Even assuming there was a constitutional violation; Barnts, would be entitled to qualified

2  immunity.  Assuming Barnts made inappropriate comments to Hardwick, he made them after the

3  phone calls could not be connected, so a reasonable officer would not know that the conduct was

4  unlawful.  For all these reasons, it would be futile to allow plaintiff to amend his complaint for a

5  third time.  Reviewing the facts of the proposed third amended complaint shows that summary

6  judgment would be granted for defendants. [8]

7  **III.     CONCLUSION**

8         1.        The motion for summary judgment (Docket No. 55) is **GRANTED**.

9         2.        The motion to amend (Docket No. 65) is **DENIED** and, in the alternative, summary

10  judgment is granted for the additional claim.

11         3.        The state law claims are denied without prejudice and may be brought in state

12  court.

13         4.        The Clerk shall close this case.

14         **IT IS SO ORDERED.**

15  Dated:  January 19, 2016

16

17  _____

18  JAMES DONATO
     United States District Judge

19

20

21

22

23

24

---

25  [8] Although federal courts have supplemental jurisdiction over state law claims under 28 U.S.C. §
26  1367(a), they may decline to exercise it under 28 U.S.C. § 1367(c).  *Acri v. Varian Associates,
     Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).  Because summary judgment has been granted to all
     defendants on all the federal claims in this case, the Court declines to exercise supplemental
27  jurisdiction over plaintiff's state law claims.  *See United Mine Workers of Am. v. Gibbs*, 383
     U.S. 715, 726 (1966).  The Court will not address the motion to dismiss the state claims.  The state
28  law claims are dismissed without prejudice to filing in state court.

United States District Court
Northern District of California

18

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS GOOLSBY,

           Plaintiff,

     v.

PUGETT, et al.,

           Defendants.

Case No.  13-cv-03366-JD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on January 19, 2016, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Thomas  Goolsby
PBSP D-8-224
F-19778
P.O. Box 7500
Crescent City, CA 95532

Dated: January 19, 2016

Susan Y. Soong
Clerk, United States District Court

By: *Lisa R. Clark*
LISA R. CLARK, Deputy Clerk to the
Honorable JAMES DONATO